UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FOREMOST SIGNATURE INSURANCE COMPANY,

                           Plaintiff,                          **REPORT AND RECOMMENDATION**

         -against-                                CV 21-1310 (NRM)(AYS)

170 LITTLE EAST NECK ROAD LLC and LINDA
VENTURA,

                         Defendants.
------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court, on referral from the Honorable Nina Morrison, are the parties' cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56.[1] For the following reasons, this Court respectfully recommends that Plaintiff's motion for summary judgment be granted and that Defendants' cross-motion be denied.

## BACKGROUND

The relevant facts, as set forth below, are taken from those portions of the parties' Local Civil Rule 56.1 statements upon which they agree, as well as the documents offered by the parties in support of and in opposition to the pending motions.

I.      The Foremost Insurance Policy

Plaintiff, Foremost Signature Insurance Company ("Foremost" or "Plaintiff"), issued a commercial general liability policy, Number PAS 12456713, to Defendant Linda Ventura ("Ventura") for the period December 14, 2017 to December 14, 2018 (the "Foremost Policy"). (Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶ 1; Def. Local Civ. R. 56.1 Statement ("Def.

---

[1] See Docket Entry ("DE") [30] (Pl. Mot. for Summ. J., filed Dec. 1, 2022); DE [31] (Def. Mot. for Summ. J., filed Dec. 1, 2022); Order of Morrison J., dated Feb. 3, 2023 (referring motions for Report and Recommendation).

56.1") ¶ 3.) The Foremost Policy contains a $1,000,000.00 each occurrence limit and a $2,000,000.00 general aggregate limit. (Def. 56.1 ¶ 3.)

Pursuant to Section II of the Foremost Policy, entitled "Who Is An Insured," each of the following, inter alia, are also considered "an insured:"

> e.  Any person or organization with whom you agree, because of a written contract, to provide insurance such as is afforded under this policy, but only with respect to liability arising out of your operations, "your work" or facilities owned or used by you.
>
> This provision does not apply:
>
> > (1) To any vendor, concessionaire, lessor of leased equipment, grantor of a franchise, engineer, architect or surveyor; or
> > (2) Unless the contract has been signed prior to the date of "bodily injury" "property damage", or "personal or advertising injury".
>
> f.  Any person or organization to whom you are obligated by virtue of a written "insured contract" to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the ownership, maintenance, or use of that part of any premises leased to you. This does not apply to:
>
> > (1) Any "occurrence" that takes place after you cease to be a tenant on those premises.
> > (2) Structural alterations, new construction or demolition operations performed by or on behalf of such insured.

(Pl. 56.1 ¶ 2; Def. Ex. 56.1 ¶ 4.)

Ventura's "work" is defined under the Foremost Policy as:

> a.  Work or operations performed by you or on your behalf; and
> b.  Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

> a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
> b.  The providing of or failure to provide warnings or instructions.

(Pl. 56.1 ¶ 3.)

Finally, the Foremost Policy provides as follows with respect to "other insurance":

5. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

    a. Primary Insurance

    This insurance is primary, except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

    b. Excess Insurance

    This insurance is excess over:

\*\*\*

    (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

\*\*\*

    c. Method of Sharing

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(Pl. 56.1 ¶ 4; Def. 56.1 ¶ 5.)

II.        The Merchants Insurance Policy

Merchants Mutual Insurance Company ("Merchants") issued Businessowners Policy Number BOP 1086006 to Defendant 170 Little East Neck Road LLC ("Little East") for the policy period July 1, 2018 to July 1, 2019 (the "Merchants Policy"). (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 21.) The Merchants Policy provides multiple lines of coverage, including business liability coverage subject to limits of liability of $1,000,000.00 per occurrence and $2,000,000.00 general aggregate. (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 21.) Under the Merchants Policy, defense costs are paid in addition to the limits of liability. (Pl. 56.1 ¶ 5.)

The Merchants Policy provides as follows with respect to "other insurance":

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

2. Business Liability Coverage is excess over:

    a. Any other insurance that insures for direct physical loss or damage; or

    b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Pl. 56.1 ¶ 6; Def. 56.1 ¶ 22.)

4

III.     The Underlying Action

In October 2016, Little East and Ventura entered into a lease (the "Lease"), with a rider (the "Rider"), by which Ventura leased Suite #5 (the "Premises") on the second floor of the property located at 170 Little East Neck Road in West Babylon, New York (the "Property"). (Pl. 56.1 ¶ 16; Def. 56.1 ¶¶ 10, 13-14.) Ventura is a self-employed financial advisor who, at the time of the underlying incident, operated her business – United Wealth Management – as well as a non-profit company out of the Premises. (Pl. 56.1 ¶ 12; Def. 56.1 ¶ 9.)

The Lease and Rider entitled Ventura to use a space in the parking lot of the Property for her automobile. (Def. 56.1 ¶ 15.) The Lease imposes no obligation on Ventura with regard to cleaning, clearing, repair or maintenance of sidewalks, walkways, or stairways at the Property, and no obligation to keep such areas clean and clear of snow, ice, rain, water or debris. (Pl. 56.1 ¶ 18.) Pursuant to Paragraph 36 of the Lease, Ventura was obligated, at her own cost and expense, to "maintain insurance protecting [her] against any and all claims for injury or damage to persons or property or for the loss of life or loss or damage to property occurring upon, in, or about the . . . Premises with [Little East] to be named as an additional insured on all such policies." (Pl. 56.1 ¶ 19.)

On February 12, 2019, Ventura commenced an action against Little East in New York Supreme Court, Suffolk County, alleging injuries sustained as a result of a slip and fall on November 15, 2018 on ice on the walkway at or near the door marked "B" at the Property (the "Underlying Action"). (Pl. 56. ¶¶ 7-10; Def. 56.1 ¶¶ 6-8.) The incident occurred at approximately 6:00 p.m. on November 15, 2018 as Ventura exited the building using a doorway marked "B," which she typically used to enter and exit from the Premises. (Def. 56.1 ¶ 11.)

5

Ventura fell on concrete steps in front of door "B" as she left work for the day and was headed to her car in the parking lot. (Def. 56.1 ¶12.)

By letter dated May 14, 2020, Little East's insurer, Merchants, tendered Little East's defense and indemnification in the Underlying Action to Foremost, pursuant to the Lease. (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 17.) By letter dated September 16, 2023, Foremost agreed to defend Little East, subject to the Foremost Policy wording that, for purposes of any duty to indemnify, Little East would be deemed a described insured "only with respect to liability arising out of the ownership, maintenance, or use of that part of any premises leased by [Ventura]." (Pl. 56.1 ¶ 20; Def. 56.1 ¶ 18.) The September 16, 2020 letter advised that Foremost did not consider Little East an Additional Insured on the Foremost Policy by endorsement. (Pl. 56.1 ¶ 20; Def. 56. ¶ 18.) By email dated October 12, 2020, Foremost reiterated its reservation of rights to deny coverage to the extent Little East fails to qualify as an insured under the Foremost Policy. (Pl. 56.1 ¶ 22.)

Foremost commenced the within declaratory judgment action on March 11, 2021, seeking a declaration of the parties' rights and liabilities with respect to the insurance coverage for the Underlying Action. (Compl. ¶ 9.) Specifically, Foremost seeks a declaration that it has no obligation to defend or indemnify Little East in the Underlying Action. By Stipulation dated April 6, 2021, Ventura agreed to be bound by the District Court's rulings herein. (Docket Entry ("DE") [9].)

Foremost and Little East have both moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56. The Court now turns to the merits of the motions.

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

II.  Foremost Withdraws its Third Claim for Relief

The Third Count of the Complaint herein seeks recoupment of the defense costs Foremost has incurred in defending Little East in the Underlying Action. (Compl. ¶¶ 41-43.) In its memorandum of law in support of its motion for summary judgment, Foremost states that "to narrow the issues for determination, [it] hereby withdraws the Third Count of the Complaint, and does not and will not seek recoupment of defense costs" against Little East. (Pl. Mem. of Law in

7

Supp. of Mot. for Summ. J. 2.) Accordingly, the Third Count of Plaintiff's Complaint is deemed withdrawn and the claim should be dismissed.

III.     New York Insurance Law Principles

"Under New York law, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" RSUI Indemn. Co. v. RCG Grp. (USA), 890 F. Supp. 2d 315, 323 (S.D.N.Y. 2012) (quoting Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006)) (additional citations omitted). The interpretation of a contract "is a matter of law for the court to decide." Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002).

"An insurer's duty to defend is 'exceedingly broad.'" Chappaqua Cent. Sch. Dist. v. Philadelphia Indem. Ins. Co., 48 N.Y.S.3d 784, 786 (2d Dep't 2017) (quoting Colon v. Aetna Life & Cas. Ins. Co., 66 N.Y.2d 6, 8 (1985)). "If any of the claims against an insured arguably rise from covered events, the insurer is required to defend the entire action." Frank v. Continental Cas. Co., 999 N.Y.S.2d 836, 838 (2d Dep't 2014). The duty to defend is "triggered by the allegations contained in the underlying complaint" and typically requires the court to compare the allegations in the underlying complaint with the terms of the insurance policy. LM Ins. Corp. v. Fed. Ins. Co., 585 F. Supp. 3d 493, 499 (S.D.N.Y. 2022) (citations omitted).

The duty to defend "is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310 (1984). Rather, the insurer's duty to defend "rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." Seaboard Sur. Co., 64 N.Y.2d at 310 (citations

8

omitted). As long as the claims asserted against the insured "may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend." Seaboard Sur. Co., 64 N.Y.2d at 310 (citation omitted). "An additional insured is entitled to the same coverage as it if were a named insured." Chappaqua Cent. Sch. Dist., 48 N.Y.3d at 786 (citing BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 714-15 (2007)).

IV. Foremost's Motion Should be Granted and Little East's Motion Should be Denied

Foremost argues that it is entitled to summary judgment based on the language set forth at Section II of the Foremost Policy, entitled "Who Is An Insured." According to Foremost, pursuant to the Lease entered into by Ventura and Little East, Ventura only leased a discrete space of the Property – "Suite 5, 2nd floor" – with no reference to the sidewalk on which Ventura's fall occurred. Foremost further argues that Ventura's fall did not arise out of her "operations" at the Premises, i.e., her employment as a financial consultant and a director of a non-profit organization. Conversely, Little East asserts that it is entitled to summary judgment as an additional insured under Section II, subsection (f), of the Foremost Policy, which applies to "liability arising out of that part of any premises leased to [Ventura]." (Little East Mem. of Law in Opp'n 6.) Little East also argues that it qualifies as an additional insured under Section II, subsection (e), of the Foremost Policy because Ventura's fall arose out of her operations at the Premises. This Court agrees with Foremost.

The New York Court of Appeals has held that the phrase "arising out of" is "ordinarily understood to mean originating from, incident to, or having connection with." General Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 568 (2d Cir. 2011) (quoting Maroney v. N.Y. Cent. Mut. Fire Ins. Co., 5 N.Y.3d 467, 472 (2005)) (additional citation omitted). "The phrase 'requires only

9

that there be some causal relationship between the injury and the risk for which coverage is provided.'" General Ins. Co., 639 F.3d at 568 (quoting Maroney, 5 N.Y.3d at 472) (emphasis omitted); see also Atlantic Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co., 56 N.Y.S.3d 207 (2d Dep't 2017); Chappaqua Cent. Sch. Dist., 48 N.Y.S.3d at 786. Moreover, "additional insured provisions, extending coverage for liability "arising out of" the named insured's work or operations, are applied consistent with 'common speech' and the reasonable expectations of a businessperson." General Ins. Co., 639 F.3d at 568 (quoting Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377 (2003)) (emphasis omitted). As such, the term "operations" is given its "ordinary meaning, considering 'the general nature of the operation in the course of which the injury was sustained.'" General Ins. Co., 639 F.3d at 568 (quoting Consol. Edison Co. v. Hartford Ins. Co., 610 N.Y.S.2d 219, 221 (1st Dep't 1994)). "The ordinary meaning of the word in the context of this case is the 'doing or performing of work.'" General Ins. Co., 639 F.3d at 568 (quoting Webster's Third New International Dictionary 1581 (2002 ed.).

The facts here are nearly identical to two prior cases in which the Appellate Division, Second Department, found no obligation to defend or indemnify on the part of the tenant's insurer – here, Foremost. In Chappaqua Central School District v. Philadelphia Indemnity Ins. Co., 48 N.Y.S.3d 784 (2d Dep't 2017), Chappaqua Children's Workshop, Inc. ("CCW") operated an after-school program in the cafeteria of a middle school building owned by the Chappaqua Central School District (the "District"), pursuant to a lease agreement. See id. at 785-86. An employee of CCW sued the District after sustaining an injury when she tripped and fell while descending an exterior staircase that led from the school building to its parking lot. See id. at 786. There, like here, the court was faced with the question of which of two insurance companies should provide coverage. CCW (plaintiff's employer) maintained a liability insurance

10

policy through defendant, Philadelphia Indemnity Insurance Company (the "Philadelphia Policy"). The District lessor maintained a liability insurance policy with New York Schools Insurance Reciprocal (the "NYSIR Policy"). See id. Like the Foremost policy here, the Philadelphia Policy contained an additional insured provision for "liability arising out of the ownership, maintenance or use of that part of the premises leased or rented to [CCW]." Id.

In support of its claim for declaratory relief in Chappaqua Central School District, the District argued that it was covered by the additional insured provision of the Philadelphia Policy because the staircase on which the injury occurred was "necessarily used for access" to the leased premises. Id. The defendant insurance company countered that the accident was not covered by the additional insured provision because it did not occur within the leased premises, and because the staircase was not "necessarily incidental" to the use of the leased premises – almost identical arguments to those being made by Foremost and Little East here. Id.

The trial court ruled in favor of the defendant and, on appeal, the Appellate Division affirmed the ruling, holding that the Philadelphia Policy did not provide coverage to defend or indemnify the District in the underlying action. The Appellate Division found that under the additional insured provision in the Philadelphia Policy, coverage was only provided for liability "arising out of" the "ownership, maintenance or use" of the "premises leased" to CCW, namely the cafeteria. Id. at 787. The Appellate Division went on to note that CCW leased only the cafeteria from the District and had no obligation to maintain or repair the staircase where the accident took place. See id. As such, "[t]here was no causal relationship between the injury and the risk for which coverage [was] provided," such that the CCW employee's injury "was not a bargained-for risk." Id.

11

An even closer factual scenario is presented in <u>Atlantic Avenue Sixteen AD, Inc. v. Valley Forge Insurance Company</u>, 56 N.Y.S.3d 207 (2d Dep't 2017). In that case, an employee of a business operating out of a portion of a building owned by the plaintiff, pursuant to a lease agreement, was injured when he slipped and fell on a patch of black ice in the building's parking lot as he was walking from his car to the building to begin work. <u>See id.</u> The lease agreement in that case provided that the building's parking lot was a common area, and that the plaintiff building owner was responsible for maintaining the common areas, including snow removal. <u>See id.</u> The employee thereafter commenced an action against the building owner. <u>See id.</u>

At the time of the employee's accident, the plaintiff building owner maintained a commercial liability insurance policy with Citizens Insurance Company of America (the "Citizens Policy"). The business where the individual was employed maintained a commercial liability insurance policy with defendant Valley Forge Insurance Company (the "Valley Forge Policy"). <u>See id.</u> As in the action currently before this Court, the Valley Forge Policy contained an additional insured provision providing coverage for the building owner for "liability arising out of the ownership, maintenance or use of that part of the premises leased to [the business]." <u>Id.</u> The portion of the building leased to the business was "Unit 2" of the building and made no reference to the parking lot. <u>Id.</u>

The building owner commenced an action seeking a declaration that Valley Forge was obligated to defend and indemnify it in the underlying injury action. <u>See id.</u> Valley Forge moved for summary judgment, seeking a declaration that it was not required to defend or indemnify the building owner. <u>See id.</u> The trial court ruled in favor of Valley Forge and, on appeal, the Appellate Division, Second Department, affirmed the trial court's holding. <u>See id.</u> In upholding the trial court's ruling, the Appellate Division held the same way it did in <u>Chappaqua Central</u>

12

School District, finding that the business "leased only a portion of the building" from the building owner, "not the parking lot where the accident occurred." Id. As such, there was "no causal relationship between the injury and the risk for which coverage was provided," such that the employee's injury "was not a bargained-for risk." Id.

The reasoning of the Appellate Division in the two foregoing cases applies equally here. Ventura was a tenant at the Property, pursuant to a written lease agreement. The Lease between Little East and Ventura contained no obligation on Ventura's part with respect to maintenance of the walkway located on the Property. In fact, the Lease imposed no obligations on Ventura outside of the discrete space she rented – the Premises located at Suite 5 on the second floor. While leaving work for the day on November 15, 2018, Ventura slipped and fell on ice on the walkway located outside of her Premises, on a common area of the Property. Just like the individuals who were injured in Chappaqua Central School District and Atlantic Avenue Sixteen AD, Inc., Ventura's injuries did not "arise out of" her maintenance or use of the Premises since she leased only Suite 5 on the second floor, and not the walkway outside of it, for which she had no duty to maintain. Accordingly, Ventura's injury was not a risk for which Foremost provided insurance coverage and, as such, Foremost should have no obligation to defend or indemnify Little East with respect to the Underlying Action. See generally Christ the King Reg. High Sch. v. Zurich Ins. Co. of N. Am., 937 N.Y.S.2d 290 (2d Dep't 2012).

The Court is aware of the line of cases on which Little East relies to support its position. Thus, the Court acknowledges that in in ZKZ Associates LP v. CNA Insurance Company, 89 N.Y.2d 990 (1997), the New York Court of Appeals held that the building owner was covered as an additional insured under an insurance policy issued to a business leasing space at the building when a pedestrian was injured on the sidewalk outside the building. See id. at 991. While that

13

case was decided by the Court of Appeals, this Court does not find it dispositive here. There, as in all of cases on which Little East relies, the person injured was a third-party visiting the properties in question for business purposes and not, like Ventura, a tenant. Had a client visiting Ventura for business purposes been injured on the icy walkway outside of the Premises, a different outcome might ensue. However, the fact that it was the tenant herself injured differentiates this case and leads this Court to issue a recommendation in accord with the more recent and factually indistinguishable holdings of the Second Department in <u>Chappaqua Central School District</u> and <u>Atlantic Avenue Sixteen AD, Inc.</u>

For the foregoing reasons, this Court respectfully recommends that Foremost's motion for summary judgment be granted in its entirety and that Little East's motion for summary judgment be denied. Since the Court finds that Foremost does not have an obligation to defend or indemnify Little East in the Underlying Action, there is no need to reach the second branch of the parties' motions with respect to which insurance would be primary.

<u>RECOMMENDATION</u>

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for summary judgment be granted in its entirety, such that Plaintiff should be awarded a declaratory judgment that it has no obligation to defend or indemnify Defendant in the Underlying Action brought by Linda Ventura in New York Supreme Court, Suffolk County. The Court further recommends that Defendant's motion for summary judgment be denied. As a result of these rulings, the counterclaims asserted by Defendant, seeking a defense and coverage as an identified insured in the Underlying Action, should also be dismissed.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      June 29, 2023

/s/    Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge